**Case No. 08-3110**

---

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

---

**JON SPENGLER**

**Plaintiff/Appellee**

**vs.**

**WORTHINGTON CYLINDERS, INC.,** *et al.*

**Defendant/Appellants.**

---

### APPELLANT'S PETITION FOR A REHEARING EN BANC

---

David A. Campbell (0066494)
VORYS, SATER, SEYMOUR
AND PEASE LLP
2100 One Cleveland Center
1375 East Ninth Street
Cleveland, Ohio  44112
Phone: 216-479-6100
Fax: 216-479-6060
dacampbell@vorys.com

Daniel J. Clark (0075125)
VORYS, SATER, SEYMOUR
AND PEASE LLP
52 East Gay Street
Columbus, Ohio 43215
Phone: 614-464-5682
Fax: 614-719-5043
djclark@vorys.com

*Counsel for Appellant Worthington Cylinders*

# <u>TABLE OF CONTENTS</u>

RULE 35(b) STATEMENT.....................................................................1

STATEMENT OF FACTS .................................................................2

REASONS FOR GRANTING THIS PETITION.......................................6

      A.    The Rule Stated in *Tisdale* is that Complainants Aided by
            Counsel in the Drafting of Their EEOC Are Not Entitled to
            the Expected Scope of the Investigation Rule.......................6

      B.    *Tisdale* is the Law of the Sixth Circuit...................................8

      C.    The Panel Decision Directly Conflicts with the Rule Set
            Forth in *Tisdale* and the Decisions Applying that Rule ....................10

      D.    The Decisions Relied Upon in the Panel Decision are
            Distinguishable and the Panel's Reliance Upon Them Was
            an Error.................................................................11

CONCLUSION......................................................................14

CERTIFICATE OF COMPLIANCE WITH RULE 32(a) .....................................15

CERTIFICATE OF SERVICE ..........................................................15

i

# TABLE OF CITATIONS

## CASES

*Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 47, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974) ...................................................................................9

*Ang*, 932 F.2d at 546 ...............................................................................7

*Cleveland Branch, NAACP v. City of Parma*, 263 F.3d 513 (6th Cir. 2001) ................................................................................... passim

*Davis v. Sodexho, Cumberland Coll. Cafeteria*, 157 F.3d 460 (6th Cir. 1998) ..........................................................................................7

*Duggins v. Steak 'N Shake, Inc.*, 195 F.3d 828 (6th Cir. 1999) ...............7

*Erbel v. Johanns*, No. 3:04-CV-555, 2008 WL 160830 (E.D. Tenn. 2008) ..........................................................................................8

*Haithcock*, 958 F.2d at 675 ......................................................................7

*Hall v. Hebrank*, 102 F.Supp.2d 844, 862 (S.D. Ohio 1999) ...................8

*Johnson v. Cleveland City Sch. Dist.*, 344 F. App'x 104, 109 (6th Cir. 2009) ................................................................................... 11, 13

*Moran v. Lockheed Martin Energy Sys., Inc.*, 50 Fed.App'x 705 (6th Cir. 2002) ..........................................................................................8

*Randolph v. Ohio Dep't of Youth Servs.*, 453 F.3d 724 (6th Cir. 2006) ...................9

*Spengler v. Worthington Cylinders, et al.*, Case No. 08-3110, p. 8-9 (July 27, 2010) ...................................................................................1

*Tisdale v. Fed. Express Corp.*, 415 F. 3d 516 (6th Cir. 2005) ........................ passim

*U.S. v. Hardin*, 539 F.3d 404 (6th Cir. 2008) ........................................12

*Ullmann v. Ohio Bureau of Emp. Servs.*, 201 F.3d 441, 1999 WL 1204768 (6th Cir. Dec. 13, 1999) ....................................................8

*Weigel v. Baptist Hosp. of East Tennessee*, 302 F.3d 367 (6th Cir. 2002) ...............9

*Younis v. Pinnacle Airlines, Inc.*, --- F.3d ---, 2010 WL 2595076 (6th Cir. June 30, 2010) ................................................................................9

## **STATUTES**

29 U.S.C. § 621 .......................................................................................3

42 U.S.C. § 2000e-5(f)(1) ......................................................................9

Ohio Revised Code § 4112.02 ...............................................................3

## **RULES**

Fed. R. App. P. 32(a) ............................................................................15

Fed. R. App. P. 32(a)(5) ........................................................................15

Fed. R. App. P. 32(a)(6) ........................................................................15

Fed. R. App. P. 32(a)(7)(B)(iii) .............................................................15

Fed. R. App. P. 35 .................................................................................15

Fed. R. App. P. 35(a)(1) ..........................................................................2

## RULE 35(b) STATEMENT

Appellant Worthington Cylinders, Inc. ("Worthington") respectfully requests a rehearing *en banc* on one of the holdings set forth in the July 27, 2010 opinion and order in *Spengler v. Worthington Cylinders, et al.*, Case No. 08-3110, p. 8-9 (July 27, 2010) (the "Panel Decision").

A rehearing *en banc* is warranted because the Panel Decision dramatically alters the settled law of this Circuit as set forth in *Tisdale v. Fed. Express Corp.*, 415 F. 3d 516, 527-28 (6th Cir. 2005) (which is applied by the majority of the courts in this Circuit).

*Tisdale* details the rule applied by the majority of the courts in this Circuit: that only claimants who are unaided by counsel in drafting their EEOC charges are entitled to have their EEOC charges liberally construed to include unasserted claims under the "expected scope of the investigation" rule (the "expected scope rule"). *Id.* This rule recognizes that most EEOC complainants are "unschooled in the technicalities" of the law and are unaided by counsel. Without a liberal construction, those complainants would be deprived of their rights under federal law due to poorly drafted charges. Conversely, attorneys who file charges on behalf of their clients are not entitled to the same liberal construction.

Directly conflicting with the *Tisdale* rule, the Panel Decision holds that Appellee Jon Spengler ("Spengler"), whose EEOC charge was drafted by his

counsel, was entitled to have his EEOC charge liberally construed to include a claim of retaliation pursuant the expected scope rule.

The Panel held so despite that Spengler's counsel failed to check the "retaliation" box in Spengler's EEOC charge and failed to include a claim for retaliation in the Complaint.  This holding drastically expands *Tisdale*'s rule in a manner inconsistent with the reasoning for that rule.  Additionally, it paves the way for plaintiffs' attorneys drafting EEOC charges to purposely fail to assert claims in a charge, only to later assert those claims to avoid summary judgment.  Such knowing gamesmanship conflicts with *Tisdale* and the policy behind that decision.

Accordingly, a rehearing *en banc* pursuant to App. R.  35(a)(1) is imperative "to secure or maintain uniformity of the [C]ourt's decisions."  *See* Fed. App. R. 35(a)(1).

## STATEMENT OF FACTS

1.    Worthington manufactures aluminum cylinders. (R. 82, transcript, p. 67.)  On January 5, 2004, Worthington hired Spengler as a seasonal worker in its Columbus, Ohio plant   (*Id.* at 67-68.)

2.     Spengler was terminated in the fall of 2004.  (R. 82, transcript, p. 76; Appendix ("App.") pp. 13-16.)

3.    Following his termination, Spengler, with the assistance of his counsel, filed a Charge of Discrimination (the  "Charge") with the Equal

2

Employment Opportunity Commission (the "EEOC") alleging only "age discrimination." (R. 24, motion, Ex. A.)  Spengler's attorney did not check the box for retaliation on the Charge. (R. 25, reply, Exs A and C.)  The EEOC processed the Charge and issued a right to sue letter. (R. 1, complaint, Ex. A.)

4.    Spengler then filed his Complaint in the Southern District of Ohio on October 26, 2005.  (R. 1, complaint.)  The Complaint asserted two claims of "age discrimination:" a claim of age discrimination pursuant to the Age Discrimination in Employment Act ("ADEA") 29 U.S.C. § 621 (Id. at ¶ 21) and a pendant state claim of age discrimination pursuant to Ohio Revised Code § 4112.02.  (*Id.* at ¶ 23.)  The Complaint did not contain a claim for retaliation. (*See generally* R.1, Complaint.)

5.    Thereafter, Worthington filed a Motion to Dismiss Count Two.  (R. 2, motion to dismiss.)  Spengler did not oppose the motion, and Count Two was dismissed.  (R. 8, order.)  In the District Court's decision granting the Motion to Dismiss, the Court described Spengler's claims as follows:

> Count I of Plaintiff's Complaint (the "Complaint") alleges *age discrimination* in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq.  Count II alleges *age discrimination* in violation of Ohio Revised Code § 4112.02 *et seq.*

(R. 8, order (emphasis added).)

6.     After the conclusion of discovery, Worthington moved for summary judgment on the remaining claim.  (R. 19, defendant's msj.)  In the first paragraph of his Opposition to the Motion, Spengler conceded that judgment was warranted on the ADEA age discrimination claim.   (R. 22, plaintiff's response, p. 1.)  However, for the first time he announced that he intended to pursue a claim of retaliation under the ADEA. (*Id.* at p. 1.)  He never filed a motion for leave to amend the Complaint.

7.     Worthington then moved the Court to reject this new claim on the grounds that it had not been pled and because Spengler had failed to file a charge of retaliation with the EEOC.  (R. 24, motion.)  Worthington further requested that the Court grant it leave to file a motion for summary judgment addressing the newly-stated retaliation claim.  (*Id.*; R. 25, defendant's reply; R. 30, defendants reply.)  On September 24, 2008, the Court granted summary judgment on the age discrimination claim, but permitted Spengler to pursue his unasserted ADEA retaliation claim.  (R. 36, order.)  The Court further denied Worthington's request for leave to file a motion for summary judgment on the retaliation claim and set the case for trial in December 2008.  (*Id.*)

8.     Following a December 20, 2007 trial, the jury returned a verdict for Spengler. (R. 64, jury verdict.)  Worthington moved for judgment as matter of law pursuant to Rule 50 during trial and renewed that Motion post-verdict.  (R. 66,

4

motion for judgment NOV; R. 83, transcript, pp. 198-220.)  Both were denied.  (R. 83, transcript, p. 220; R. 77, order.)

9.    On January 22, 2008, Worthington filed this appeal. (R. 70, notice of appeal.)

10.    On appeal, Worthington argued, *inter alia*, that the District Court's denial of Worthington's Motion for Summary Judgment and Rule 50 Motions was in error.  (Brief of Appellant.)  Specifically, Worthington argued that judgment in its favor was appropriate because Spengler failed to exhaust his administrative remedies pursuant to *Tisdale v. Fed. Express Corp.*, 415 F. 3d 516, 527-28 (6th Cir. 2005).  (*Id.*)

11.    On July 27, 2010, a Sixth Circuit panel consisting of Circuit Judges Siler, Moore, and Clay (the "Panel") entered an Opinion and Order.  (*See* Panel Decision.)

12.    The Panel Decision affirmed the District Court's ruling, holding, in part, that Spengler's EEOC charge should be liberally construed pursuant to the expected scope rule as held in *Cleveland Branch, NAACP v. City of Parma*, 263 F.3d 513, 536 (6th Cir. 2001), despite the fact that he was represented by counsel in drafting that charge.  (*Id.* at p. 8.)  Pursuant to the expected scope rule, the Panel then found that the language of Spengler's EEOC charge, when broadly interpreted, set forth sufficient facts to put the EEOC on notice of his retaliation

claim despite his failure to check the "retaliation" box.  (*Id.*)  Having found that

Spengler exhausted his administrative remedies, the Panel affirmed the District

Court's denial of judgment to Worthington.  (*Id.* at 9.)

Worthington now requests that the Panel Decision be reheard *en banc* for the

reasons set for below.

## REASONS FOR GRANTING THIS PETITION

### The Panel Decision Conflicts with *Tisdale v. Fed. Express Corp.*, 415 F.3d 516 (6th Cir. 2005), and a Rehearing *En Banc* is Necessary to Secure Uniformity in this Court's Decisions.

#### A. The Rule Stated in *Tisdale* is that Complainants Aided by Counsel in the Drafting of Their EEOC Are Not Entitled to the Expected Scope of the Investigation Rule.

*Tisdale v. Fed. Express Corp.* sets forth the rule of this Circuit that only

claimants unaided by counsel in the filing of their EEOC charges are entitled to a

liberal interpretation of their charges pursuant to the expected scope rule.  *See*

*Tisdale v. Fed. Express Corp.*, 415 F.3d 516, 527-28 (6th Cir. 2005).  The Panel

Decision directly conflicts with this rule, and thus a rehearing *en banc* is needed to

secure unanimity in this Court's decisions.

Identical to this case, in *Tisdale*, a terminated employee of FedEx filed a

charge of discrimination with the EEOC alleging discrimination, but failed to

"check the box" for retaliation.  *Id.* at 520-21, 527.  During the later-filed suit,

FedEx moved for summary judgment on a retaliation charge included in the

6

plaintiff's complaint, arguing, like here, that the plaintiff had not exhausted his administrative remedies on the retaliation claim and it was thus barred. *Id.* at 520-21. The District Court denied that motion, and FedEx appealed after the jury found in the plaintiff's favor. *Id.*

In affirming the district court's decision, a panel from this Court sets forth the expected scope rule in this Circuit as follows:

> We have cautioned . . . that an EEOC charge "filed by lay complainants" should be "liberally construed," *Haithcock*, 958 F.2d at 675, because they "are unschooled in the technicalities of the law and proceed without counsel." *Ang*, 932 F.2d at 546. Actions in federal court "should not be restricted by the failure of a complainant to attach the correct legal conclusion to the EEOC claim, conform to procedural technicalities, or include the exact wording which might be required in a judicial pleading." *Davis v. Sodexho, Cumberland Coll. Cafeteria*, 157 F.3d 460, 463 (6th Cir. 1998). **Thus, where the claimant is unrepresented, a "broader reading of the charge ... is compelled**." *Duggins v. Steak 'N Shake, Inc.*, 195 F.3d 828, 832 (6th Cir. 1999). **In such cases, we have stated that "[t]he judicial complaint must be limited to the scope of the EEOC investigation reasonably expected to grow out of the charge of discrimination."** *Ang*, 932 F.2d at 545 (internal quotation omitted). Therefore, "where facts related with respect to the charged claim would prompt the EEOC to investigate a different, uncharged claim, the plaintiff is not precluded from bringing suit on that claim." *Davis*, 157 F.3d at 463.

*Tisdale,* 415 F.3d at 527 (emphasis added). Because the plaintiff was unaided by counsel when he filed his charge, the panel in *Tisdale* applied the expected scope rule. *Id.* at 527-28. It then found that, when read broadly, his charge included sufficient facts to put the EEOC on notice that he was claiming retaliatory discharge and affirmed the District Court's ruling. *Id.* at 528.

By its language, *Tisdale* makes clear that the expected scope rule is only available to complainants unaided by counsel in filing their EEOC charges. It further makes clear that this liberal rule is only necessary because unsophisticated claimants unschooled in the technicalities of the law and unaided by counsel in drafting EEOC charges should not be denied a remedy under federal discrimination statutes due to procedural mistakes or drafting errors. *Tisdale*, 415 F.3d at 527-28.

### B. *Tisdale* is the Law of the Sixth Circuit.

Until the Panel Decision, the courts of this Circuit had consistently applied the rule set forth in *Tisdale* that complainants represented by counsel may not avail themselves to the expected scope rules. *See Moran v. Lockheed Martin Energy Sys., Inc.*, 50 Fed.App'x 705 (6th Cir. 2002) ("Because Moran was represented by counsel at the time of filing his EEOC complaint, liberal construction of his complaint was not required"); *Ullmann v. Ohio Bureau of Emp. Servs.*, 201 F.3d 441, 1999 WL 1204768, *4 (6th Cir. Dec. 13, 1999) ("Ullmann is an attorney who claims to be an expert in employment law and therefore should not be entitled to such a liberal reading"); *Hall v. Hebrank*, 102 F.Supp.2d 844, 862 n. 11 (S.D. Ohio 1999) ("Dismissal of Hall's disparate treatment claim is particularly appropriate given that she filed her OCRC sexual harassment charge with the assistance of counsel"); *Erbel v. Johanns*, No. 3:04-CV-555, 2008 WL 160830, at * 13 (E.D. Tenn. 2008) ("As Dr. Erbel was represented by counsel at the time of the filing of

8

her EEO complaint and subsequent EEO affidavits . . . , her constructive discharge claim" is barred")*; but see Weigel v. Baptist Hosp. of East Tennessee*, 302 F.3d 367, 379-81 (6th Cir. 2002) (applying the expected scope rule to allow a claimant whose counsel drafted her EEOC complaint where the attorney failed to check the retaliation box without analysis).

As recently as June 2010, this Court reaffirmed the rule articulated in *Tisdale*. In *Younis v. Pinnacle Airlines, Inc.*, --- F.3d ---, 2010 WL 2595076 (6th Cir. June 30, 2010), in summarizing the rule, this Court stated:

> As a general rule, a Title VII plaintiff cannot bring claims in a lawsuit that were not included in his EEOC charge. See 42 U.S.C. § 2000e-5(f)(1); *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 47, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974). This rule serves the dual purpose of giving the employer information concerning the conduct about which the employee complains, as well as affording the EEOC and the employer an opportunity to settle the dispute through conference, conciliation, and persuasion. *See id.* at 44, 94 S.Ct. 1011. Hence, allowing a Title VII action to encompass claims outside the reach of the EEOC charges would deprive the charged party of notice and would frustrate the EEOC's investigatory and conciliatory role. At the same time, **because aggrieved employees-and not attorneys-usually file charges with the EEOC, their pro se complaints are construed liberally**, so that courts may also consider claims that are reasonably related to or grow out of the factual allegations in the EEOC charge. *See Randolph v. Ohio Dep't of Youth Servs.*, 453 F.3d 724, 732 (6th Cir. 2006).

*Younis*, --- F.3d ---, 2010 WL 2595076, at *2 (Daughtrey, Gilman, and Sutton, Circuit Judges). The Panel Decision thus also conflicts with *Younis*.

Given this Circuit's nearly uniform application of the rule that complainants assisted by counsel in drafting their EEOC charges are not entitled to the expected scope rule, the Panel Decision represents a dramatic shift from the law of this Circuit.  Such a radical change in the law of this Circuit will cause confusion and invite unwarranted gamesmanship by plaintiffs' attorneys who aid their clients in drafting EEOC charges.

Therefore, this Court should rehear the Panel Decision *en banc*, and set down an authoritative statement of the law, affirming *Tisdale*'s rule that protects lay complainants while concomitantly avoid establishing a precedent that opens the door to gamesmanship.

### C. The Panel Decision Directly Conflicts with the Rule Set Forth in *Tisdale* and the Decisions Applying that Rule.

The Panel Decision applies the expected scope rule to an EEOC charge filed by a complainant who was aided by a seasoned employment attorney[1] in filing that charge, holding, "the fact that we liberally construe EEOC charges filed by *pro se* complainants 'does not mean that a broad reading may not, or should not, be given in cases where a plaintiff has counsel.'"  (Doc. 006110689834, Opinion and Order, p. 8 (citing *Cleveland Branch, NAACP v. City of Parma*, 263 F.3d 513, 536 (6th Cir. 2001).)   It went on to hold that, "where a plaintiff clearly sets forth a

---

[1] In support of his Motion for Attorneys Fees, Spengler's counsel confirmed his experience in litigating **over 100** employment matters.  (R. 65, Ex.4).

retaliation claim in the narrative of the EEOC charge such that both the defendant and the EEOC were on notice of the plaintiff's retaliation claim, a broad reading of the EEOC charge is appropriate **regardless of whether the plaintiff was represented by counsel when filing the charge.**" (*Id.* at p. 8.)

*Tisdale* (and the litany of cases applying the general rule summarized in it) dictate that complainants represented by counsel when filing EEOC charges are not entitled to the expected scope rule. In holding that Spengler, whose EEOC charge was drafted by his counsel, was entitled to a broad interpretation of his EEOC charge pursuant to the expected scope rule, the Panel Decision overrules *Tisdale* and a number of this Circuit's decisions.

Therefore, a rehearing *en banc* is necessary to secure uniformity in the law of this Circuit.

### D. The Decisions Relied Upon in the Panel Decision are Distinguishable and the Panel's Reliance Upon Them Was an Error.

The Panel Decision cites *Cleveland Branch, NAACP v. City of Parma*, 263 F.3d 513, 536 (6th Cir. 2001), and *Johnson v. Cleveland City Sch. Dist.*, 344 F. App'x 104, 109 (6th Cir. 2009), in support of its holding that EEOC charges drafted by complainants aided by counsel are entitled to liberal interpretation pursuant to the expected scope rule. (Doc. 006110689834, Opinion and Order, p. 9.) This holding conflicts with the settled law of this Circuit, as shown above, because these cases are distinguishable and do not state the law of this Circuit.

*Cleveland Branch*'s statement that "a broad reading [of an EEOC charge] may . . . be given in cases where a plaintiff has counsel," which the Panel Decision cites as the law, is unsupported *dicta* and should not have been relied upon.  In *Cleveland Branch*, the complainant was aided in the filing of her EEOC charge by a **non-attorney NAACP representative**.  *Cleveland Branch*, 263 F.3d at 536.  She was thus **unaided by counsel** in drafting of her charge.  *Id.*        Therefore, the court's statement that "a broad reading [of an EEOC charge] may . . . be given in cases where a plaintiff has counsel" is immaterial to its holding because the plaintiff in *Cleveland Branch* was not aided by counsel.  That statement is therefore *dicta* because it is not essential to the court's holding, and the Panel erred in relying on it as a statement of the law.  *See U.S. v. Hardin*, 539 F.3d 404 (6th Cir. 2008) (explaining that *dicta* is a portion of a court's opinion that is "not necessary to the holding" or "not essential to [the] resolution of a case").  Moreover, the *Cleveland Branch* panel provides no citation for its statement.  *Cleveland Branch*, 236 F.3d at 536.  So it is not only *dicta*, but it is also unsupported.  When stripped of this unsupported *dicta*, *Cleveland Branch*'s holding is consistent with *Tisdale*, as it simply broadly construes an EEOC charge filed by a complainant unaided by **counsel**.  Accordingly, *Cleveland Branch* is distinguishable, and the Panel Decision's reliance on it was in error.

Likewise, it was also an error for the panel to rely on *Johnson*. Unlike *Tisdale* and *Cleveland Branch,* the plaintiff *Johnson* had counsel at the time she filed her EEOC Charge. *Johnson*, 344 Fed.App'x at 109, n. 7. However, she "was not **assisted by counsel** in the preparation of her . . . charge[] of discrimination." *Johnson*, 344 Fed.Appx. at 109, n. 7. The plaintiff, the Court held, was therefore entitled to the liberal interpretation of the expected scope rule because she was unaided by counsel at the time of her EEOC charge. *Id.* Like *Cleveland Branch, Johnson* is also consistent with *Tisdale* in that it applies the expected scope rule to a claimant who was unaided by counsel when filing her EEOC charge. Additionally, the Panel Decision's citation to *Johnson* in support of was also in error because *Johnson* merely cites *Cleveland Branch*'s unsupported *dicta* statement that "a broad reading [of an EEOC charge] may . . . be given in cases where a plaintiff has counsel."

Because neither *Cleveland Branch* nor *Johnson* applied the expected scope rule applied to an EEOC charge drafted by counsel, the Panel Decision contradicts the expected scope rule as articulated in *Tisdale* and widely applied in this Circuit. Unlike the complainants in those cases, Spengler was represented by counsel at the EEOC charge stage. His counsel failed to check the "retaliation" box on his charge and failed to include retaliation in the Complaint. It was only when discovery had concluded and Spengler faced summary judgment that his counsel asserted his

13

retaliation claim.  According to law in this Circuit, Spengler's EEOC charge should not have been broadly construed.  Similarly, pursuant to policy behind *Tisdale*, the expected scope rule should not have been applied because it is not meant to help sophisticated employment attorneys avoid summary judgment by adding a new claim late in a case.

## CONCLUSION

Accordingly, the Panel Decision's holding that Spengler was entitled to liberal construction of his EEOC charge is in conflict with the expected scope rule as summarized in *Tisdale* and consistently applied in this Circuit.  Therefore, this Court should rehear the Panel Decision *en banc* so that it may secure uniformity in its decisions.

Respectfully submitted,

/s/David A. Campbell
David A. Campbell (0066494)
VORYS, SATER, SEYMOUR AND PEASE LLP
2100 One Cleveland Center
1375 East Ninth Street
Cleveland, Ohio  44112
Phone: 216-479-6178
Fax: 216-479-6060
dacampbell@vorys.com

/s/ Daniel J. Clark
Daniel J. Clark (0075125)
VORYS, SATER, SEYMOUR AND PEASE LLP
52 East Gay Street
Columbus, Ohio 43215
Phone: 614-464-6436
Fax: 614-719-4650
djclark@vorys.com

*Counsel for Appellant Worthington Cylinders*

14

## <u>CERTIFICATE OF COMPLIANCE WITH RULE 32</u>

Pursuant to Fed. R. App. P. 35 and Sixth Cir. R. 35, the undersigned certifies that this brief complies with the type-volume limitations because this brief is under 15 pages, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

This brief also complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in proportionally spaced typeface using Microsoft Word 2003 in Times New Roman, 14 point.

/s/David A. Campbell
David A. Campbell

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 10th day of August 2010, a copy of the foregoing *Appellant's Petition for a Rehearing En Banc* was filed electronically and 25 paper copies were delivered to the Sixth Circuit Clerk.

Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/David A. Campbell
David A. Campbell

15

RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 10a0221p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————

JON SPENGLER,

*Plaintiff-Appellee,*

            *v.*

WORTHINGTON CYLINDERS,

*Defendant-Appellant.*

No. 08-3110

———————

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 05-00977—Algenon L. Marbley, District Judge.

Argued: January 19, 2010

Decided and Filed: July 27, 2010

Before: SILER, MOORE, and CLAY, Circuit Judges.

———————

## COUNSEL

**ARGUED:** David A. Campbell, III, VORYS, SATER, SEYMOUR AND PEASE LLP, Cleveland, Ohio, for Appellant. Gary A. Reeve, LAW OFFICES OF GARY A. REEVE, LLC, Columbus, Ohio, for Appellee. **ON BRIEF:** David A. Campbell, III, VORYS, SATER, SEYMOUR AND PEASE LLP, Cleveland, Ohio, Daniel J. Clark, VORYS, SATER, SEYMOUR AND PEASE LLP, Columbus, Ohio, for Appellant. Gary A. Reeve, LAW OFFICES OF GARY A. REEVE, LLC, Columbus, Ohio, for Appellee.

———————

## OPINION

———————

        CLAY, Circuit Judge. Defendant Worthington Cylinders appeals the district court's denial of its Rule 50(b) motion and the jury verdict rendered in favor of Plaintiff Jon Spengler, who sued Defendant alleging age discrimination, in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.*, and Ohio's anti-discrimination

statute, Ohio Rev. Code § 4112.02. For the reasons set forth below, we **AFFIRM** the district court's denial of Defendant's Rule 50(b) motion and the jury's damages awards.

## I.   BACKGROUND

### A.     Factual Background

Defendant Worthington Cylinders manufactures pressure cylinders that are used to hold propane, refrigerant, and industrial gases. Defendant employs both regular, full-time ("RFT") employees and temporary or seasonal employees. During its busiest periods, Defendant employs about 120 seasonal employees.

In January 2004, Defendant hired Plaintiff Jon Spengler as a seasonal employee. At the time, Plaintiff was fifty-three years old. Plaintiff began his tenure with Defendant manning a spraywash, and based on his good performance, he was reassigned to operate the presses. From February 2004 to August 2004, Defendant conducted three employee evaluations of Plaintiff. Plaintiff earned the second-highest rating, "definitely above average," on his first two evaluations and the third-highest rating, "doing an average job," on his third evaluation.

On several occasions throughout the year, Defendant selects seasonal employees to be elevated to RFT status, the goal being to select the "best of the best" among its seasonal workforce. (Appellant's Br. 14.) Despite the drop in Plaintiff's evaluation rating, in November 2004, Dennis Huggins, the pressroom supervisor, recommended Plaintiff for consideration for RFT status.

Defendant's RFT review process involves many steps. First, John Hoffman, the plant manager, asks supervisors to identify RFT candidates. Next, the management team interviews and investigates the candidates, ultimately ranking all of them. From those rankings, the top candidates are recommended for RFT status and those recommendations are presented to Defendant's Employee Council. The Employee Council solicits feedback from all RFT employees and then reports back to management. If current RFT employees oppose a candidate's elevation to RFT status based on a legitimate reason, then that seasonal employee is not elevated to RFT status.

In November 2004, Plaintiff was one of thirteen candidates considered for RFT employment. Plaintiff was ranked eighth and only the top six candidates' names were submitted to the Employee Council. Consequently, Plaintiff was not elevated to RFT status.

In December 2004, Huggins approached Plaintiff and offered to recommend Plaintiff for employment at Defendant's Steel Division. According to Plaintiff, Huggins told Plaintiff he thought Plaintiff would be "a good fit" and said "besides, you would probably have trouble keeping up with the younger guys . . . here [in the cylinder division]." (Appellee's Br. 6.) Plaintiff asked whether Huggins would still recommend him for RFT status at the cylinder division and Huggins said that he would, but stated that Plaintiff only had about a fifty-fifty chance of attaining RFT status there. Huggins kept his word and, in December 2004, submitted Plaintiff's name as an RFT candidate.

After his meeting with Huggins, Plaintiff became concerned about their conversation and thought that Huggins seemed to have an age-related bias against him. Consequently, Plaintiff emailed Hoffman to determine whether he had previously been denied RFT status because of his age. On January 16, 2005, Hoffman met with Plaintiff. Thereafter, according to Hoffman, he told Plaintiff that he took Plaintiff's age discrimination allegations "very seriously" and that he "would never tolerate that." Hoffman then explained that Defendant's Steel Division was regarded as the company's most prestigious division and told Plaintiff that he should feel honored to have such an opportunity.

After speaking with Plaintiff, Hoffman approached Huggins about Plaintiff's age discrimination concerns. Thereafter, according to Plaintiff, Huggins' attitude toward him changed. Specifically, Plaintiff stated that Huggins kept his distance and refused to make eye contact with Plaintiff. On February 9, 2005, Huggins called Plaintiff into his office and terminated his employment, telling Plaintiff that he was being fired because of negative comments from Plaintiff's co-workers about his attitude and interpersonal skills. Plaintiff asked about the transfer to the Steel Division, to which Huggins replied that Plaintiff would not be recommended for a Steel Division position. Huggins also informed Plaintiff that Plaintiff would not be rehired in the future.

**B.     Procedural History**

On May 9, 2005, Plaintiff filed a complaint alleging age discrimination with the Equal Employment Opportunity Commission ("EEOC").  The EEOC issued a right-to-sue letter on September 8, 2005.  On October 26, 2005, Plaintiff filed this action, asserting two statutory bases for relief: (1) violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, and (2) violation of Ohio's anti-discrimination statute, Ohio Revised Code ("R.C.") § 4112.02.  Defendant filed an unopposed motion to dismiss Plaintiff's state law claim, which was granted on June 16, 2006.

Defendant subsequently moved for summary judgment on Plaintiff's ADEA claim as well, arguing that it did not improperly consider Plaintiff's age when refusing to elevate him to RFT status or in deciding to terminate his employment and that Plaintiff had no direct or circumstantial evidence demonstrating otherwise.  Instead, Defendant argued, the evidence showed that its decisions were the result of complaints from Plaintiff's co-workers about his poor attitude and inability to work cooperatively.  Plaintiff did not oppose summary judgment for Defendant on his age discrimination claim, and instead argued that summary judgment was improper insofar as he alleged an ADEA claim for retaliatory discharge.

Defendant responded by arguing that Plaintiff failed to plead a retaliatory discharge claim in his complaint and thus could not revise his theory to defeat summary judgment.  Plaintiff's retaliation claim, argued Defendant, was barred because Plaintiff had failed to exhaust his administrative remedies since he did not assert a retaliation claim in his EEOC charge.  Defendant moved to strike from Plaintiff's motion opposing summary judgment any reference to his retaliation claim.  Defendant also moved for leave to file a second dispositive motion challenging Plaintiff's retaliation claim.  Plaintiff moved for leave to file a surreply to Defendant's summary judgment motion.

On September 24, 2007, the district court: (1) granted Defendant's motion for summary judgment on Plaintiff's ADEA claim[1], (2) denied Defendant's motion to strike, (3) denied Defendant's motion for leave to file a second summary judgment motion

---

[1]Plaintiff conceded his age discrimination claim, acknowledging that he was lawfully denied RFT status.

regarding Plaintiff's retaliation claim, (4) denied Defendant summary judgment on Plaintiff's retaliation claim, and (5) granted Plaintiff's motion for leave to file a surreply to Defendant's summary judgment motion. The case proceeded to trial and on December 20, 2007, a jury returned a verdict in favor of Plaintiff in the amount of $21,944 for lost wages and the same amount in liquidated damages. Defendant moved for a directed verdict pursuant to Federal Rule of Civil Procedure 50 at the conclusion of Plaintiff's case and again at the end of the trial. Both requests were denied. Defendant's motion for judgment notwithstanding the verdict was also denied. On January 22, 2008, Defendant commenced this appeal, arguing that: (1) the district court lacked subject matter jurisdiction over Plaintiff's retaliation claim due to Plaintiff's failure to exhaust his claim, (2) Plaintiff failed to plead a retaliation claim, (3) Plaintiff's retaliation claim failed as a matter of law, and (4) the damages awarded to Plaintiff were not supported by the evidence.[2]

## II.  DISCUSSION

### A.    Standard of Review

We review *de novo* a district court's denial of a motion for judgment as a matter of law. *Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 543 (6th Cir. 2008). A motion for judgment as a matter of law requires the district court to determine "whether there was sufficient evidence presented to raise a material issue of fact for the jury." *Monette v. AM-7-7 Baking Co.*, 929 F.2d 276, 280 (6th Cir. 1991). The district court should decline to submit a matter to the jury "when viewed in the light of those

---

[2]In its brief, Defendant indicates that it is appealing the district court's partial denial of its motion for summary judgment as well as the district court's denial of its Rule 50(b) motion and the jury verdict. However, "where summary judgment is denied and the movant subsequently loses after a full trial on the merits, the denial of summary judgment may not be appealed." *Jarrett v. Epperly*, 896 F.2d 1013, 1016 (6th Cir. 1990). This rule recognizes that it would be "unjust to deprive a party of a jury verdict after the evidence was fully presented, on the basis of an appellate court's review of whether the pleadings and affidavits at the time of the summary judgment motion demonstrated the need for a trial." *Id.* at 1016 n.1. There is an exception to this rule where the denial involves a pure question of law. "[W]here the denial of summary judgment was based on a question of law rather than the presence of material disputed facts, the interests underlying the [general] rule are not implicated." *Barber v. Louisville & Jefferson County Metro. Sewer Dist.*, 295 F. App'x 786, 789 (6th Cir. 2008) (first alteration in original). The district court's denial of summary judgment in the instant case was not based on a pure question of law. Therefore, we conclude that Defendant may not appeal the district court's denial of its motion for summary judgment. Consequently, we only review Defendant's appeal of the denial of his Rule 50(b) motion and his claim that the jury's verdict for Plaintiff was against the weight of the evidence.

inferences most favorable to the nonmovant, there is either complete absence of proof on the issues or no controverted issues of fact upon which reasonable persons could differ." *Id.* A motion for judgment as a matter of law should be granted only when "reasonable minds could come to but one conclusion in favor of the moving party." *Tisdale v. Fed. Express Corp.*, 415 F.3d 516, 527 (6th Cir. 2005) (internal quotation marks omitted). In reviewing the district court's decision, we may not "weigh the evidence, pass on the credibility of witnesses, or substitute [our] judgment for that of the jury." *Imwalle*, 515 F.3d at 543 (quoting *Toth v. Yoder Co.*, 749 F.2d 1190, 1194 (6th Cir. 1984)) (alteration in original) (internal quotation marks omitted). This Court reviews *de novo* a district court's ruling on the question of liquidated damages in an ADEA action. *Carberry v. Monarch Marking Sys., Inc.*, 30 F. App'x 389, 394 (6th Cir. 2002).

## B.    Administrative Exhaustion

Defendant argues that the district court lacked subject matter jurisdiction to hear Plaintiff's retaliation claim because Plaintiff failed to file a claim of retaliation in his EEOC charge. Specifically, Defendant contends that Plaintiff failed to present his retaliation claim to the EEOC because he failed to check the "Retaliation" box and that because Plaintiff was represented by counsel at the time he filed his charge, he is not entitled to a liberal construction of his charge.

Defendant correctly points out that a plaintiff "must file a charge with the EEOC before filing a complaint alleging age discrimination in federal court." *See Davis v. Sodexho, Cumberland Coll. Cafeteria*, 157 F.3d 460, 463 (6th Cir. 1998). Defendant is also correct that retaliation claims based on conduct that occurred before a charge is filed must be included in that charge.[3] *Tisdale*, 415 F.3d at 527. However, in light of

---

[3] Retaliation claims are typically excepted from the filing requirement because they usually arise after the EEOC charge is filed. *Abeita v. TransAmerica Mailings, Inc.*, 159 F.3d 246, 254 (6th Cir. 1998). However, this exception "does not apply to retaliation claims based on conduct that occurred before the EEOC charge was filed." *Id.*; *accord Ang v. Procter & Gamble Co.*, 932 F.2d 540, 547 (6th Cir. 1991) ("Retaliatory conduct occurring prior to the filing of the EEOC complaint is distinguishable from conduct occurring afterwards as no unnecessary double filing is required by demanding that plaintiffs allege retaliation in the original complaint."). Since the alleged retaliation occurred prior to Plaintiff filing his EEOC charge, this exception does not apply.

*Arbaugh v. Y & H Corp.*, 546 U.S. 500 (2006), we can no longer conclude that exhaustion is a jurisdictional prerequisite.  In *Arbaugh*, the Supreme Court adopted the following rule of construction to determine whether a statutory requirement is jurisdictional:

> If the Legislature clearly states that a threshold limitation on a statute's scope shall count as jurisdictional, then courts and litigants will be duly instructed and will not be left to wrestle with the issue. . . . But when Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as nonjurisdictional in character.

*Id.* at 515-16.

Accordingly, "although administrative exhaustion is still a statutory prerequisite to maintaining claims brought under the ADEA, the prerequisite does not state a limitation on federal courts' subject matter jurisdiction over such claims.  To reach this conclusion, we look to the statute that sets forth the requirement at issue."  *Allen v. Highlands Hosp. Corp.*, 545 F.3d 387, 401 (6th Cir. 2008) (citing *Arbaugh*, 546 U.S. at 515-16).  Defendant points to no statutory provision nor do we find any statutory provision indicating that exhaustion is a jurisdictional prerequisite under the ADEA.

We now turn to Defendant's claim that Plaintiff failed to file a retaliation claim and thus failed to exhaust his administrative remedies.  Defendant contends that Plaintiff's charge did not adequately set forth his retaliation claim such that Defendant's potential liability for retaliatory discharge could "reasonably be expected to grow out of the EEOC charge."  *Abeita*, 159 F.3d at 254.  This is known as the "expected scope of investigation test" and requires a plaintiff to have alleged sufficient facts in his or her EEOC complaint to put the EEOC on notice of the other claim even though the plaintiff failed to check the appropriate box on the EEOC's complaint form.  *Dixon v. Ashcroft*, 392 F.3d 212, 217 (6th Cir. 2004).  Accordingly, "where facts related with respect to the charged claim would prompt the EEOC to investigate a different, uncharged claim, the plaintiff is not precluded from bringing suit on that claim."  *Weigel v. Baptist Hosp. of*

*E. Tenn.*, 302 F.3d 367, 380 (6th Cir. 2002) (quoting *Davis*, 157 F.3d at 463) (internal quotation marks omitted).

Plaintiff stated in his EEOC complaint that Huggins' demeanor toward him was "noticeably changed" and that Huggins would not "make eye contact or generally speak" to him after Hoffman met with Huggins to discuss Huggins' comments to Plaintiff. (EEOC Charge 3.)   Also included in Plaintiff's EEOC charge was the following statement:

> I believe my termination was all about my last meeting with [Hoffman].
> I believe [Huggins] resented having to deny making the comment about
> my age.  And after that, [Huggins] was clearly not pleased with me.  He
> alone determined that I should bee [sic] terminated.  Typically, when a
> seasonal employee has worked 12 months and has not made full-time, he
> has to take a 60-day break.  He can then be rehired for another 12
> months.  I was told that I would not be rehired for the pressroom or for
> any other area or shift.  It was clear this was a personal vendetta that
> could be traced to [Huggins'] comment about my age.

(EEOC Charge 3.)  We find that this language sets forth sufficient facts to put the EEOC on notice of Plaintiff's retaliation claim despite his failure to check the "Retaliation" box on the charge.

Defendant argues that liberal construction of Plaintiff's EEOC charge is inappropriate because Plaintiff was represented by counsel.  However, as this Court has previously stated, the fact that we liberally construe EEOC charges filed by *pro se* complainants "does not mean that a broad reading may not, or should not, be given in cases where a plaintiff has counsel."  *Cleveland Branch, NAACP v. City of Parma*, 263 F.3d 513, 536 (6th Cir. 2001); *see also Johnson v. Cleveland City Sch. Dist.*, 344 F. App'x 104, 109 (6th Cir. 2009).  In a case such as this where a plaintiff clearly sets forth a retaliation claim in the narrative of the EEOC charge such that both the defendant and the EEOC were on notice of the plaintiff's retaliation claim, a broad reading of the EEOC charge is appropriate regardless of whether the plaintiff was represented by

counsel when filing the charge.[4]  Accordingly, we conclude that the district court did not err in allowing Plaintiff's case to proceed to trial.

### C.        Plaintiff's Retaliation Claim

The Age Discrimination in Employment Act prohibits an employer from "discriminat[ing] against any of his employees . . . because such individual . . . has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation under  [the Act]."  29 U.S.C. § 623(d).  An employer will be strictly liable for a supervisor's proven discrimination where such discrimination results in an adverse employment action.  *Keeton v. Flying J, Inc.*, 429 F.3d 259, 262 (6th Cir. 2005).  An adverse employment action is defined as one that "could well dissuade a reasonable worker from making or supporting a charge of discrimination."  *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006).

"A plaintiff in a Title VII or ADEA action may establish retaliation either by introducing direct evidence of retaliation or by proffering circumstantial evidence that would support an inference of retaliation."  *Imwalle*, 515 F.3d at 543.  Direct evidence is evidence, which if believed, does not require an inference to conclude that unlawful retaliation motivated an employer's action.  *Id.* at 543-44.  Instead, direct evidence "requires the conclusion that unlawful retaliation was a motivating factor in the employer's action."  *Abbott v. Crown Motor Co.*, 348 F.3d 537, 542 (6th Cir. 2003) (emphasis omitted).  Here, Plaintiff's evidence, *i.e.*, Huggins' comments, is not direct

---

[4]The Court's recent opinion in *Younis v. Pinnacle Airlines, Inc.*, No. 08-6112, 2010 WL 2595076 (6th Cir. June 30, 2010), does not alter our conclusion.  In *Younis*, the Court stated that "because aggrieved employees–and not attorneys–usually file charges with the EEOC, their *pro se* complaints are construed liberally, so that courts may also consider claims that are reasonably related to or grow out of the factual allegations in the EEOC charge."  *Id.* at *2.  Even if, *arguendo*, *Younis* dictated a different result here, the Court's prior opinion in *Cleveland Branch, NAACP* explicitly allows a broad reading of an EEOC charge in cases where the plaintiff has counsel.  It is well-established that one panel cannot overrule a pre-existing decision of another panel of this Court.  *Salmi v. Sec'y of Health & Human Servs.*, 774 F.2d 685, 689 (6th Cir. 1985). Moreover, *Younis* is distinguishable from the case at bar because in *Younis*, there was "nothing in the narrative portion of the EEOC charge that could be interpreted as claiming retaliation, nor [wa]s there any language that would have put the EEOC or the employer on notice that [the plaintiff] was alleging retaliation."  *Younis*, 2010 WL 2595076, at *3.  In this case, however, the narrative of Plaintiff's EEOC charge clearly and explicitly sets forth his retaliation claim and provides the EEOC and employer with notice of Plaintiff's retaliation claim.

evidence of discrimination because even if believed, it would not *require* the conclusion that Defendant unlawfully retaliated against Plaintiff.

When a plaintiff presents only circumstantial evidence of retaliation, we examine ADEA retaliation claims under the same *McDonnell Douglas/Burdine* framework used to assess discrimination claims. *Imwalle*, 515 F.3d at 544. Accordingly, because Plaintiff does not proffer any direct evidence regarding retaliation, we examine his retaliation claim using the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) and *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248 (1981).

Under the *McDonnell Douglas/Burdine* framework, Plaintiff has the initial burden to establish a *prima facie* case of retaliation under the ADEA by establishing that: (1) he engaged in protected activity when he made his age discrimination complaint; (2) Defendant knew about his exercise of the protected activity; (3) Defendant thereafter took adverse employment action against him; and (4) there was a causal connection between the protected activity and the adverse employment action. *Fox v. Eagle Distrib. Co.*, 510 F.3d 587, 591 (6th Cir. 2007) (citing *Weigel*, 302 F.3d at 381). If Plaintiff establishes a *prima facie* case, the burden of production shifts to Defendant to "articulate some legitimate, nondiscriminatory reason for [its action]." *McDonnell Douglas*, 411 U.S. at 802. If Defendant succeeds in doing so, then the burden shifts back to Plaintiff to demonstrate that Defendant's "proffered reason was not the true reason for the employment decision." *Tuttle v. Metro. Gov't of Nashville*, 474 F.3d 307, 320 (6th Cir. 2007) (quoting *Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 793 (6th Cir. 2007)) (internal quotation marks omitted).

### 1.　　　Failure to Plead Retaliation

As an initial matter, we deal with Defendant's assertion that Plaintiff failed to plead retaliation in his judicial complaint. Specifically, Defendant argues that Plaintiff's complaint contained only an ADEA age discrimination claim. Defendant argues that Federal Rule of Civil Procedure 8 "requires more from a plaintiff" in order to set forth a claim. (Appellant's Br. 27.) Consequently, argues Defendant, adding a retaliation

claim required an amendment to the complaint which was neither sought nor granted. We disagree.

Federal Rule of Civil Procedure 8 requires "a short and plain statement of the claim." Fed. R. Civ. P. 8(a)(2). As the Supreme Court has stated, "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original).

In Paragraph 11 of Plaintiff's judicial complaint, Plaintiff set forth Huggins' remark that Plaintiff would "have trouble keeping up with the younger employees." In Paragraph 12, Plaintiff noted his email to and meeting with Hoffman regarding Huggins' comment as well as Huggins' denial that he made the comment. Paragraph 13 discussed how Huggins' demeanor toward Plaintiff changed after Plaintiff reported Huggins' comment and Paragraph 14 highlighted the temporal proximity of Plaintiff reporting the comment and Plaintiff being fired.

We conclude that Plaintiff's judicial complaint set forth facts establishing a *prima facie* case of retaliation under the ADEA. He pled facts showing that he engaged in a protected activity, that Defendant knew he did so, that he was subsequently fired, and that there was a causal connection between him engaging in the protected activity and him being fired. Moreover, Paragraph 19 actually alleged that Plaintiff "was terminated as a result of his complaints regarding his age being a factor in the decisions to not promote him" and Paragraph 20 stated that Defendant "willfully discriminated against [him] due to his age and his complaints regarding age discrimination." No meaning can be derived from these two statements other than that Defendant retaliated against Plaintiff for having complained about Huggins' ageist remark. Accordingly, we find that Plaintiff adequately pled a retaliation claim.

## 2.      The Merits of Plaintiff's Retaliation Claim

In order to prevail on a retaliation claim where the defendant has articulated a legitimate, nondiscriminatory reason for the adverse employment action, the plaintiff must not only establish pretext, but also establish "that the real reason for the employer's action was intentional retaliation." *Imwalle*, 515 F.3d at 544. However, the Supreme Court has held that "it is permissible for the trier of fact to infer the ultimate fact of discrimination from the falsity of the employer's explanation." *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 147 (2000) (emphasis omitted). In *Reeves*, the Supreme Court stated that

> [p]roof that the defendant's explanation is unworthy of credence is simply one form of circumstantial evidence that is probative of intentional discrimination, and it may be quite persuasive. *See* [*St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502,] . . . 517 [(1993)] . . . ("[P]roving the employer's reason false becomes part of (and often considerably assists) the greater enterprise of proving that the real reason was intentional discrimination") . . . [O]nce the employer's justification has been eliminated, discrimination may well be the most likely alternative explanation, especially since the employer is in the best position to put forth the actual reason for its decision. . . . Thus, a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated.

530 U.S. at 147-48 (citation omitted).

A plaintiff can rebut an employer's legitimate, nondiscriminatory reason and show pretext by demonstrating that: "(1) the employer's stated reason for terminating the employee has no basis in fact, (2) the reason offered for terminating the employee was not the actual reason for the termination, or (3) the reason offered was insufficient to explain the employer's action." *Imwalle*, 515 F.3d at 545 (citing *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994)). Plaintiff relies on the second type of rebuttal evidence and has the ultimate burden of producing "sufficient evidence from which the jury could reasonably reject [Defendant's] explanation and

infer that [Defendant] intentionally discriminated against him." *Id.* (quoting *Johnson v. Kroger*, 319 F.3d 858, 866 (6th Cir. 2003)) (internal quotation marks omitted).

Defendant argues that it is entitled to judgment as a matter of law because Plaintiff failed to establish a *prima facie* case, specifically a causal connection between Spengler's discharge and the protected activity. However, this Court has previously noted that in an appeal where there has already been a jury trial on the merits, our duty is to determine whether Plaintiff produced sufficient evidence to support the jury's finding that Defendant terminated his employment in retaliation for his complaints of age discrimination. Accordingly, we "cannot simply hold that [Plaintiff's] failure to provide evidence of an essential element of [his] prima facie case is dispositive." *See Tisdale*, 415 F.3d at 529. Moreover, as discussed below, we conclude that Plaintiff produced evidence of a causal connection.

Defendant contends that Plaintiff's discharge was undeniably caused by his failure to attain RFT status, as evidenced, argues Defendant, by the uniform enforcement of and testimony about the company's 12-month rule. To establish a causal connection, Plaintiff must "proffer evidence sufficient to raise the inference that [his] protected activity was the likely reason for the adverse action." *Upshaw v. Ford Motor Co.*, 576 F.3d 576, 588 (6th Cir. 2009) (quoting *EEOC v. Avery Dennison Corp.*, 104 F.3d 858, 861 (6th Cir. 1997)) (internal quotation marks omitted). Closeness in time is one indicator of a causal connection, *see Little v. BP Exploration & Oil Co.*, 265 F.3d 357, 364-65 (6th Cir. 2001), but temporal proximity, standing alone, is not enough to establish a causal connection for a retaliation claim. *Tuttle*, 474 F.3d at 321. Nonetheless, there are circumstances in which temporal proximity, when combined with other evidence of retaliatory conduct, is enough to establish a causal connection, such as when the plaintiff can "show[] that he was treated differently from other employees." *Id.* (quoting *Moore v. KUKA Welding Sys.*, 171 F.3d 1073, 1080 (6th Cir. 1999)) (internal quotation marks omitted).

In evaluating Plaintiff's rebuttal evidence, we must decide whether, when viewing the facts in the light most favorable to Plaintiff, Plaintiff produced sufficient

evidence for a reasonable jury to find that Defendant's explanation for terminating Plaintiff's employment was pretextual, and that he was actually terminated because of his complaint of age discrimination. This involves a two-part showing, requiring a reasonable disbelief of Defendant's proffered reason and circumstantial evidence that retaliation more likely than not motivated Defendant to terminate Plaintiff's employment. *See Imwalle*, 515 F.3d at 547.

Defendant claims that pursuant to its 12-month rule, any seasonal employee who failed to make RFT status would be discharged after 12 months of seasonal employment. In setting forth its position, Defendant relies on employee testimony that it contends established that the 12-month rule was consistently applied. Since Plaintiff failed to make RFT status after 12 months of seasonal employment, argues Defendant, he was discharged in accordance with the 12-month rule. Defendant also contends that Plaintiff was treated just as well as, if not better than, other employees as he was considered for RFT status twice and was even retained beyond 12 months to allow for the completion of the second RFT process. Defendant claims that once the second RFT process revealed concerns from Plaintiff's RFT co-workers, Plaintiff was denied RFT status and as a result, discharged.[5]

However, Plaintiff produced evidence that the 12-month rule was selectively enforced, pointing to Hoffman's deposition testimony in which Hoffman stated: (1) the 12-month rule was only applied if there was a slowdown in production; and (2) there had not been a slowdown in production between the time Plaintiff was hired and the time of trial. Moreover, there was evidence that other seasonal employees had remained employed longer than twelve consecutive months. Yet, Plaintiff met with Hoffman to discuss Huggins' comments on January 16, 2005 and was subsequently terminated a few weeks later on February 9, 2005. Plaintiff also produced evidence that Huggins' attitude towards him noticeably changed after Plaintiff's conversation with Hoffman. Specifically, Plaintiff stated that Huggins kept his distance and refused to make eye

---

[5]Plaintiff does not dispute that he was lawfully denied RFT status, but rather contends that he was entitled to continued seasonal employment after the denial of RFT status.

contact with him.  Hoffman told Huggins that Plaintiff perceived his comments to be ageist and even instructed Huggins to meet with Plaintiff to "clear it up."  Huggins failed to comply with Hoffman's instruction.  In fact, Huggins made no effort whatsoever to correct Plaintiff's impression or reassure Plaintiff that his age was not a factor with respect to his chance to obtain RFT status.  Huggins also failed to follow through on his promise to refer Plaintiff to the Steel Division.

Plaintiff also set forth evidence that he was a valuable employee at the time he was discharged.  For example, prior to Plaintiff's complaint of age discrimination, he had been recommended twice for RFT status which, given the RFT process, indicates that he was one of the best seasonal employees.  Plaintiff had also earned a referral to a prestigious division of the company and had received four merit-based raises during his tenure at Defendant.  Although former co-workers testified that they made "kind of negative" statements about Plaintiff to Huggins prior to Plaintiff's discharge, some of them mixed such statements with praise for Plaintiff's work and recommendations that he be given RFT status.

We conclude that the totality of the evidence in the record, when viewed in the light most favorable to Plaintiff, does not lead reasonable minds to but one conclusion in favor of Defendant.  Consequently, granting Defendant's motion for judgment as a matter of law would have been inappropriate.

### D.    Damages

Defendant argues that the jury improperly awarded lost wages damages and liquidated damages to Plaintiff.  First, Defendant argues that Plaintiff's lost wages damages were inappropriate because the ADEA does not require preferential treatment. Damages for lost wages, Defendant argues, would result in preferential treatment for Plaintiff because Plaintiff would not have earned such wages given the operation of its 12-month rule.

We find Defendant's argument unconvincing.  Defendant is correct that the ADEA "does not require an employer to accord special treatment to employees over

forty years of age[, but to treat] an employee's age . . . in a neutral fashion." *Slenzka v. Landstar Ranger, Inc.*, 122 F. App'x 809, 813 (6th Cir. 2004) (quoting *Parcinski v. Outlet Co.*, 673 F.2d 34, 37 (2d Cir. 1982)) (alterations in original) (internal quotation marks omitted). However, as we stated above, Plaintiff presented sufficient evidence such that the jury could conclude Defendant's assertion of the 12-month rule was merely pretext. As a result, Plaintiff may have continued work as a seasonal employee despite his failure to make RFT status within the prescribed period, especially since Hoffman testified at his deposition that the 12-month rule was enforced when there was a production slowdown and that no such production slowdown occurred during the course of Plaintiff's employment. Accordingly, because Plaintiff established the amount of his damages[6] and Defendant failed to prove by a preponderance of the evidence that Plaintiff was not entitled to those damages, damages were properly awarded.

Liquidated damages are appropriate so long as "there [is] sufficient evidence to support the jury's finding that [Defendant's] discrimination against [Plaintiff] was willful." *Skalka v. Fernald Envtl. Restoration Mgmt. Corp.*, 178 F.3d 414, 423 (6th Cir. 1999). An ADEA violation is considered "willful" if "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the ADEA." *Tuttle*, 474 F.3d at 322 (quoting *Trans World Airlines v. Thurston*, 469 U.S. 111, 128-29 (1985)) (internal quotation marks omitted). It is not enough to show that the employer "knew of the potential applicability of the ADEA." *Carberry*, 30 F. App'x at 395.

Defendant contends that Plaintiff cannot recover liquidated damages because there is no evidence in the record that suggests Defendant knew its actions were prohibited by the ADEA. Plaintiff argues that because Huggins testified that he knew it was unlawful for an employer to retaliate against an employee because that employee complained of discrimination, liquidated damages were appropriate.

---

[6]Plaintiff presented evidence regarding how many hours per week he worked and his hourly rate.

The jury found that Huggins retaliated when he fired Plaintiff and there was ample evidence from which the jury could conclude that Huggins knew he was breaking the law in doing so.  As a result, the jury could have reasonably concluded that Huggins' conduct was willful and therefore, liquidated damages were warranted.

### III.   CONCLUSION

For the reasons stated above, we **AFFIRM** the district court's decision.